Chancellor Harper
delivered the opinion of the court.
The two first grounds of appeal may be disposed of together. •On both the grounds taken in the decree, the jurisdiction of the •court must be supported. It is admitted that during the life time of the tenant for life of personal chattels, he is regarded as a trustee for the remainderman. But the trust is supposed to terminate with his life. But this is contrary to the main purpose, for which he is made a trustee. It is hardly necessary to say, that at com. mon law, there could be no limitation of personal chattels to one for life, with remainder to another, and that a gift for a day or an hour, vested the whole in the first taker. Executory devises and ¡the limitations of the trusts of personalty, by which alone such dispositions can be rendered effectual, are exclusively the creatures of equity. It was by regarding the tenant for life as a trasteo, that equity took jurisdiction, for the purpose of compelling his personal representative to execute the trust, by delivering the property to the person entitled in remainder. The cases cited in argument are amply sufficient to establish this. Then not only the peisoual representative of the tenant for life, but every volunteer and every purchaser with notice, on a well known principle, are bound by ihe trust. If then, as the decree establishes, (and we think correctly,) John Heyward Glover was a volunteer under his mother, he and his personal representative are equally bound to the execution of the trust. And if it were shewn that courts of law recognize the division of personal estate between tenant for life and remainder* man, this would not oust the court of equity of its ancient and ac. customed jurisdiction. See the reasoning of the court in King vs. Baldwyn, 17 Johns.
We think too, that the nature of the property sought by the bill, forms a grouud of jurisdiction. It is for the specific delivery of slaves. We do not feel at all disposed to depart from the principles of the decision in Sarter vs. Gordon, quoted in the decree, to the reasoning of which I refer. It is admitted that in some particular instances, such as are referred to in that case, where there are circumstances to give a peculiar value to the slave, with respect to the person who seeks to recover him, and to shew that damages would be an inadequate compensation, there may be a ground of jurisdiction. But it is urged, that such circumstancas ought to be stated and proved, before the case is taken from the ordinary tribunals of the country, to which it properly belongs.
But if it were necessary to state- such circumstances, I think *60 they are sufficiently stated in the present case. The slaves in question were a gift to the cestui que trust of complainant, by a friend and relation, and were received by her from the gift of another. if the court gives that consideration to the just and honorable feeling whioh causes a man to set a peculiar value on an heir loom, derived to him from his ancestors, and to regard the damages which a jury, estimating its money value, would give, as'nd compensation for its loss, is there less ground for its interposition to give him slaves — sentient and intelligent beings — derived to him from a friend or ancestor, whom he may be supposed to love or venerate. Are not family slaves, who are often, and I think I may say generally, attached dependants, of as much value to the feelings oí the owner as a piece of family plate or a family picture. As was said by the chancellor, in Fells vs. Read, “It would be great injus. tice if an individual cannot have his property, without being liable to the estimate of people who have not his feelings upon it.” It was urged, that an effectual remedy was given by the late act regulating the action of trover. But that act only provides, that security shall be given for the forthcoming of the slaves, to answer the damages which may be recovered. If the defendant will pay the damages the title of the slaves is vested in him. But it is on the ground of the inadequacy of damages as a compensation, that the court interferes.
I am of opinion, however, in pursuance of the views in Sarter vs. Gordon, that when a man states that his slave has come into the possession of another, who refuses to deliver him, or that he has contracted for the purchase of specific slaves and the vender refuses to perform his contract, he states a sufficient ground of equity jurisdiction. Any other construction would render the law uncertain and impracticable. It is admitted that in some cases, a bill may properly lie for a specific delivery — as where the slave has been born and brought up in the owners family, or has for a long time belonged to it, so that a peculiar attachment may be supposed to have been formed, or has peculiar qualities, which render him of more value to the owner than to any one else ; or where a contract has been made for a slave on account of such peculiar qualities, and the object of the contract1 could not be obtained without a specific delivery. Or suppose a mother to be converted by a stranger, having an infant child in the possession of the master, or a husband or wife to be so converted, leaving the other in the master’s possession. But how are these circumstances to be as, eertaiued by evidence 1 By what rule will you fix the length of *61 time that a slave shall have belonged to his owner, so that he may be supposed to have formed a particular attachment for him ? Will you go into evidence of the slave’s character and qualities, to determine whether they are such as give him a peculiar value to the feelings of his owner, or to have formed a probable inducement to the purchaser in making a contract for him ? Suppose him to be one of a family of slaves still in the owner’s possession, and who are rendered of less value by his loss, (which is often the case,) will jmu fix the degree of relationship — such as that of parent or child, husband or wife — which would authorize the court to interfere ? Such a construction would tend greatly to litigation, and afford room for great looseness of discretion. I can think of no safe or practicable rule but that already expressed — that if a man’s slave has come into the possession of another who refuses to deliver him, or if he has contracted for specific slaves, he has a right to a specific delivery. But if the contrary appears — if he contracted for slaves generally, with no view to any particular individuals, or if they were contracted for as merchandize, to sell again, the remedy is at law.
I agree with the appellant’s counsel, that when there is a complicated question of title, when there is much conflicting testimony, or more especially when the credit due to testimony is to be weighed, a jury is the proper tribunal for the trial of those questions. And if the suggestion had been made below, 1 might perhaps 'nave directed an issue. But it was not demanded below, and at the present stage of the case, when so great delay would be occasioned to the parties, and having no serious reason to doubt the correctness of the conclusion to which I have arrived, I think we are not authorized to direct it now.
The next ground relates to the admissibility of the testimony of John Huger. The rule is, that to disqualify a witness, “ the interest must be a present, certain interest, and not uncertain or contingent. So it was held that a steward was competent to prove that a fine was payable on the death of the lord, although the establishment of the affirmative might render a readmission necessary and entitle him to a fee.” 2 Stark. Ev. 745. The record must certainly be evidence to fix or rebut his liability in a future action. As observed in Cotchett vs. Dixon, 4 M'Cord 314, “it is not enough that he has an interest in the subject matter m litigation— it must be an interest in the event of the particular cause.” What is the cause at issue ? The bill states that the defendant Mrs, ©lcyer, is in possession of certain slaves, which are claimed as bc« *62 ing descended from those bequeathed by the will of Daniel Hey« ■ward, which the complainants state they are prepared to identify by proof. The defendant requires the proof to be made, and urges in defence that the stock of slaves bequeathed by Daniel Heyward has perished. The testimony of the witness would seem rather to be against his interest in this cause. It is not disputed but that these slaves once belonged to Mrs. Glover. If they are still part of her estate, undivided, he has a claim in right of his wife to a moiety of them, which would be defeated by the recovery of the complainants. If they were divided as part of her estate, and fell to the share of John Heyward Glover, his representative would have a claim against the witness for contribution. In this cause theD,he has no interest. But it was thrown out in argument, aud the court intimated that there might be just ground for the opinion, that another case might be made in which he would have an interest. If the complainants should fail to identify the slaves, and if the defendant failed to prove that the stock had perished, then the estate of Mrs. Glover might be mide liable for the estimated value of such a stock of slaves, she having been trustee for the remain-derman, and the witness and John Heyward Glover, having divided her estate, it might be pursued in their hands, if the complain, ants should fail to recover m this case. This is similar m principle to the cases of Briggs vs. Cuch, 5 Esp. N. P. C. 99 ; Duncan vs. Ball, 2 Nott and M Cord 153 ; Lightner vs. Martin, 2 M'Cord 214, and Harth vs. Johnson, 2 Bailey 183. In an action for the breach of warranty of soundness of a horse or slave, the defendant’s vendor may be a witness for him, though a verdict in favor of the defendant would obviate the chance of the wituess’ being made liable in a future action. It may be said, as in Johnson vs. Harth, it is true, that if the complainants recover against the present defendant he will have no right of action against the witness, because he will have sustained no damage, and therefore, it may be said that the judgment will be of benefit to the witness by obviating the chance oí his being made liable in a future action. But this is not the sort of interest that will disqualify a witness ; nor is it in this sense, the law says the verdict must be evidence for or against him. It is not like the case of an action for the breach of warranty of title, in which a verdict against the defendant would of itself be the foundation of an action against his vender.
If the present bill should be dismissed, that would be no evidence for or against the witness, in a future action to be brought against him. But if the present complainant should succeed, if *63 is thought the decree would be evidence in the event of such ari action as has been surmised. If the complainant succeeds, he' will have no right of action against any one in respect of his present claim, because the claim will be satisfied. The decree may be evidence, not as a judgment, but as a fact to make out the proof of his having received satisfaction. If be had received satisfaction by agreement with the defendant, this would have been equally a bar. If two persons were suspected of a trespass, or proved to have committed it, it might as well be said that one was an incompetent witness for the plaintiff in a suit against the other, because if he should recover satisfaction of the defendant, this would be a bar to an action against any one else.
The third and fourth grounds form in effect but one. In addition to what is said in the' decree, I may observe that even hearsay evidence may be admitted on a question of pedigree, and this is in reality a question of pedigree. The original stock of slaves are admitted to be all dead, and the question is, whether these now claimed are their descendants ? And it comes within the qualification expressed in Whitelocke vs. Baker, 13 Ves. 514, in relation to-the reception of evidence of tradition. It must be from persons having such a connexion with the parties, that i't is natural and likely from their domestic habits, that they are speaking the truth.
I shall make a few remarks on the last general grouud. Admitting the testimony of Air. Huger, there can be no doubt of the credit due to it. Then it is certain that at the death of Mrs. Glover, there were in the possession of John Heyward Glover, and at the plantation of Wrightfield, twenty-five or thirty slaves to which the complainants are entitled. It is objected that complainants have-not sufficiently identified them. As is said in the decree, no others-are indicated as being those left by Airs. Glover. I'f, as- was suggested, iieyward Glover obtained the slaves now claimed by purchase from his- mother, or from any other person, or in any other inanner, certainly it is to be supposed that it was in the defendant’s power to show this. The particular slaves claimed were named in the bill, aud the defendant put upon her defence. Failing to do so, can she complain that all presumptions should be against her, and that effect should be given to slight testimony for the purpose of identifying the slaves. Without these circumstances, I ad'-mit the testimony of Ferrabee' would be very slight. I cannot doubt but that justice, though not perhaps full justice, has been done-by the decree.
In considering the complainants grounds of appeal, with respect *64 to the claim for slaves who died since the filing of this biíl, tító court is of opinion, that the decision referred to by the decree in relation to the measure of damages in an action of trover, must be confined to the particular case. Certainly the general rule is as contended for on the part of complainants, and supported by the authorities referred to, that if a bailee or pawnee, who are trustees* wrongfully refuses to deliver the deposit or pledge when it is demanded, he thenceforth keeps it at his own risk, and is liable for the value, if it afterwards perishes. See Story on Bailm. 93, 231* and the authorities there referred to. The principle seems to apply to the present case; the tenant for life or volunteers under her being regarded as trustees. The value of these slaves must therefore be a subject of reference. With respect to the second ground* I do not perceive the evidence to charge the estate of Wilson Glover witn the cattle. The memorandum said to be in his hand writing, of their being removed from Springfield, does not furnish evidence of their being taken possession of by him for his own use. The same memorandum includes the slaves removed at the same lime, which it is agreed remained her separate estate. The maker of the memorandum states himself to have taken charge of all the property specified. There is no other evidence whatever, to charge Wilson Glover’s estate in opposition to the allegation of the bill.A reference is ordered with respect to the slaves* who died since the filing of the bill, but in every other respect the decree is affirmed*
King and Memmingek, for motion.
PetigRtj & Lesesne, contra.
Filed 10th March, 1837.
WILLIAM HARPER.
1 concur*
BÁYID JOHNSON*